**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division

UNITED STATES OF AMERICA

v.

LYNDRELL HAWKINS,

Defendants.

Case No. 4:25-cr-75

**OPINION & ORDER**

Defendant Lyndrell Hawkins moves to suppress the evidence obtained during a traffic stop he claims was unlawfully prolonged and from a search warrant he asserts was obtained without probable cause and based upon inaccurate information. ECF Nos. 28 (traffic stop), 30 (search warrant). The defendant also requests disclosure of the identity of a confidential informant referenced in the search warrant affidavit. *See* ECF No. 31. For the reasons stated below, the motions will be **DENIED**.[1]

## I.     BACKGROUND[2]

In March 2025, law enforcement began receiving information about drug activity involving the defendant, who was living at the Hyatt Place Hotel in Hampton, Virginia. ECF No. 31-1 at 8 ¶¶ 9–10. Based on that information, law enforcement

---

[1] Because the parties' briefing presents sufficient undisputed facts, the Court decides these motions on the briefing and without oral argument.

[2] In describing the traffic stop, the defendant refers to "body-camera footage" to establish certain facts but curiously does not provide the Court with such footage. ECF No. 29 at 1, 4–5. The Court therefore relies on facts either not in dispute or included in the search warrant affidavit. *See* ECF No. 31-1.

conducted surveillance on the defendant at the Hyatt Place. *Id*. at 8 ¶ 10. On April 8 and 17, 2025, law enforcement surveilled Hawkins from the Hyatt Place to separate locations, where he "proceeded to make [] hand to hand transaction[s]," which, based on the investigators' training and experience, were "consistent with narcotic sales." *Id*. at 9 ¶¶ 10–12.

On April 24, 2025, investigators observed the defendant walk out of the Hyatt Place with three bags in his hand and enter a car with a female passenger. ECF No. 31-1 at 9 ¶ 13–14. Investigators followed him to an apartment complex, where they "observed [him] meet with an unknown [] male for a brief period," which "[b]ase[d] on [] training and experience . . . [was] indicative of hand[-]to[-]hand drug transactions." *Id*. The investigators continued to follow the defendant's car until they observed him cut across two lanes with no pauses. *Id*. at 9 ¶ 13.

At approximately 12:15 p.m., investigators conducted a traffic stop based on "the fact that [the vehicle] had improper tags." ECF No. 29 at 1 ¶ 4; ECF No. 31-1 at 10 ¶ 14; ECF No. 34 at 4; ECF No. 34-1. By 12:18 p.m., the officers became aware that the car was in fact properly registered. ECF No. 29 at 4; ECF No. 34 at 4. During this time, the investigators identified the female passenger as having a warrant for assault and also repeatedly instructed the defendant to turn off his vehicle and step out after he had turned it back on. ECF No. 31-1 at 10 ¶ 14.

At approximately 12:30 p.m., a narcotics canine positively alerted investigators to the presence of narcotics. ECF No. 31-1 at 10 ¶ 15. Law enforcement then searched the vehicle and recovered narcotics, bulk U.S. currency, multiple cell phones, plastic

credit/money cards, bags matching those the defendant was observed with earlier that day, and multiple Hyatt Place room keys. *Id.* at 10–11 ¶¶ 15–16.

After searching the vehicle, law enforcement returned to the Hyatt Place where "[a] check of the hotel registry" showed the defendant was staying in room 230 from April 12–27, 2025, and where "[m]anagement advised" that the defendant had been at the hotel since at least January 2025. ECF No. 31-1 at 10 ¶ 16. A narcotics canine conducted an "open air sniff" outside room 230 and indicated a positive alert to the presence of narcotics. *Id.*; ECF No. 34 at 4.

Based on this information, law enforcement obtained a search warrant and conducted a search of room 230, where they identified additional narcotics, money, a pill press, and a digital scale. ECF No. 34 at 4–5.

## II.    LEGAL STANDARD

### A.    Traffic Stops Under the Fourth Amendment

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "[E]vidence seized in violation of the Fourth Amendment is subject to suppression under the exclusionary rule . . . the overarching purpose of which is 'to deter future unlawful police conduct.'" *United States v. Andrews*, 577 F.3d 231, 235 (4th Cir. 2009) (quoting *United States v. Calandra*, 414 U.S. 338, 347–48 (1974)) (other citation omitted).

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure'

of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). Therefore, an automobile stop must not be unreasonable under the circumstances. *Id.* Because an automobile stop is more akin to an investigative detention, courts apply the reasonableness standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968), to determine "(1) if the stop was legitimate at its inception, and (2) if the officer's actions during the seizure were reasonably related in scope to the basis for the traffic stop." *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018) (quotation marks and citation omitted).

Under the second prong, an officer may "conduct an investigation unrelated to the reasons for the traffic stop as long as it [does] not lengthen the roadside detention." *Bowman*, 884 F.3d at 209 (quotation marks and citation omitted, emphasis removed). To "extend the detention of a motorist beyond the time necessary to accomplish a traffic stop's purpose, the authorities must either possess reasonable suspicion or receive the driver's consent." *United States v. Williams*, 808 F.3d 238, 245–46 (4th Cir. 2015) (quotation marks and citations omitted); *see also United States v. Palmer*, 820 F.3d 640, 649–50 (4th Cir. 2016).

Reasonable suspicion requires more than a hunch but less proof than is required for probable cause. *Kansas v. Glover*, 589 U.S. 376, 380 (2020). Courts "consider the totality of the circumstances to determine whether the facts known to the officers at the time of the stop objectively gave rise to reasonable suspicion." *United States v. Critchfield*, 81 F.4th 390, 394 (4th Cir. 2023).

4

### B.    Probable Cause for a Search Warrant

In issuing a search warrant, "[t]he task of the [] magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A reviewing court must "simply [] ensure that the magistrate had a substantial basis for concluding that probable cause existed," based on the totality of the circumstances. *Id.* at 238–39 (alterations accepted).

### C.    Disclosure of a Confidential Informant

*Roviaro v. United States*, 353 U.S. 53 (1957), "recognizes the existence of a qualified privilege to withhold the identity of persons who furnish information regarding criminal activity to law enforcement officials." *United States v. Smith*, 780 F.2d 1102, 1107 (4th Cir. 1985). However, exceptions to such a privilege exist where disclosure has occurred to "those who would have cause to resent the communication," or when disclosure "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Roviaro*, 353 U.S. at 60–61. "The defendant must come forward with something more than speculation as to the usefulness of such disclosure" and "[o]ne of the most important factors to be considered is the materiality of the evidence to the defendant's particular defense." *Smith*, 780 F.2d at 1108.

### III.    ANALYSIS

#### A.    Fruits of the Traffic Stop

The defendant moves to suppress all evidence obtained from an April 24, 2025 traffic stop because he alleges that the stop was "prolonged beyond the time reasonably required to complete [the] mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005); ECF No. 29 at 3–4. The defendant does not argue that the traffic stop was illegitimate at its inception. *Id.* at 1 ¶ 4 (stating that the "vehicle was ultimately stopped for the fact that it had improper tags"); *see* ECF No. 34-1. Therefore, the defendant challenges the stop only under the second *Terry* prong—if the officer's actions during the seizure were reasonably related in scope to the basis for the traffic stop.

The defendant argues that "[i]mmediately upon the traffic stop being made if not before, the police were fully aware that the tags were the proper ones" and at that point, the stop should have ended. ECF No. 29 at 3. Therefore, any actions that occurred after were illegal. *Id.* at 3–4. On the other hand, the government contends that the approximately fourteen-minute traffic stop before the narcotics canine alerted the investigators to the odor of narcotics was reasonable, and in any event, the investigators had reasonable suspicion of illegal activity based on their observations of the defendant to extend the detention beyond the time necessary to run the tags. ECF No. 34 at 7–10.

"Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional

incidents of a routine traffic stop," which may include "request[ing] a driver's license and vehicle registration, run[ning] a computer check, and issu[ing] a citation," as well as performing a "canine sniff." *United States v. Branch*, 537 F.3d 328, 335 (4th Cir. 2008). The timeline that is reasonably required "cannot be stated with mathematical precision," and is a fact-intensive inquiry. *Id.* at 336.

Here, the investigators stopped the defendant's vehicle at approximately 12:15 p.m. ECF No. 34 at 4; ECF No. 31-1 at 10 ¶ 14; *see* ECF No. 29 at 4. And no more than fourteen minutes later, at approximately 12:29 p.m., a narcotics canine positively alerted. ECF No. 34 at 4; ECF No. 31-1 at 10 ¶ 15. During this time, the investigators also discovered that the female passenger had a warrant for assault and repeatedly asked the defendant to turn off the vehicle and step out after he initially turned the vehicle back on. ECF No. 31-1 at 10 ¶ 14. It is reasonable to the Court that the ordinary inquiries incident to the traffic stop—including running a computer check and interfacing with the defendant—would reasonably take fourteen minutes. And so, the fourteen-minute detention was justified by the ordinary inquiries incident to a routine traffic stop. *United States v. Perez*, 30 F.4th 369, 375–77 (4th Cir. 2022) (finding fifteen minutes to check registration and license reasonable); *United States v. Hill*, 852 F.3d 377, 383–84 (4th Cir. 2017) (finding twenty minutes to write two summonses and run computer checks reasonable); *see also Branch*, 537 F.3d at 338; *Caballes*, 543 U.S. at 408.

But even if the timeline was not justified by the ordinary inquiries, the facts here demonstrate that the investigators had a reasonable suspicion that the

7

defendant was in possession of contraband: The investigators had previously observed the defendant engage in multiple hand-to-hand transactions, which in the investigators' experience were consistent with narcotics transactions. ECF No. 31-1 at 8–9 ¶¶ 10–13. Earlier that same day, the investigators observed the defendant leave the Hyatt Place with multiple bags, drive to an apartment complex, and engage in a hand-to-hand transaction indicative of a drug transaction. *Id.* at 9 ¶ 13. Therefore, the investigators had reasonable articulable suspicion of drug activity sufficient to authorize any potential delay of the defendant's detention prior to the narcotics canine's positive alert. *See United States v. Vaughan*, 700 F.3d 705, 712 (4th Cir. 2012) (drug-detection dog arriving 16 minutes into traffic stop was reasonable delay based on reasonable suspicion of contraband presence); *Palmer*, 820 F.3d at 652-53.

Accordingly, the traffic stop was not unlawfully prolonged.[3]

---

[3] To the extent the defendant attempts to claim that the stop was pretextual and thus unconstitutional, that argument is not persuasive given that the stop was lawful in the first instance. *See United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir. 1993) ("[I]f an officer has probable cause or reasonable suspicion to stop a vehicle, there is no intrusion upon the Fourth Amendment. That is so regardless of the fact that the officer would not have made the stop but for some hunch or inarticulable suspicion of other criminal activity."). In other words, "[w]hen an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle. . . . [T]his otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity. . . . [T]hat stop remains valid even if the officer would have ignored the traffic violation but for his other suspicions." *Id.* (quoting *United States v. Cummins*, 920 F.2d 498, 500–01 (8th Cir. 1990)).

### B.       Fruits of the Search Warrant

The defendant also moves to suppress evidence seized on April 24, 2025, from room 230 of the Hyatt Place because the search warrant lacked probable cause, contained inaccurate information, and/or was based on information obtained in violation of the defendant's Fourth Amendment rights. ECF No. 31.

First, the defendant argues, without citing any case law, that the search warrant affidavit was based on information received from a confidential source "whose identity and background" or "information about his/her reliability" "has not been disclosed . . . despite repeated requests." ECF No. 31 at 2–3.

An analysis of whether a search warrant affidavit supports a finding of probable cause looks to the totality of the circumstances, including, for example, both the tip and any independent corroborating information. *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983); *United States v. Graham*, 93 F. App'x 511, 514–15 (4th Cir. 2004) (unpublished).

Here, the search warrant affidavit describes that a confidential informant (CS1)'s tip prompted law enforcement's initial investigation of the defendant. ECF No. 31-1 at 8 ¶¶ 8–9. The affidavit then describes the multiple occasions when investigators observed the defendant leaving the Hyatt Place and engaging in hand-to-hand transactions consistent with narcotics sales. *Id.* at 8–9 ¶¶ 10–13. Additionally, the affidavit describes that on the day that the search warrant was obtained, the investigators observed the defendant leave the Hyatt Place with bags,

drive away, and engage in a hand-to-hand transaction consistent with narcotics sales. *Id.* at 9 ¶ 13.

Investigators then uncovered from the defendant's car narcotics, bags matching those that the defendant was observed with earlier that day, multiple Hyatt Place room keys, and other items indicative of narcotics sales. ECF No. 31-1 at 10 ¶ 15. Finally, the affidavit explains that the investigators confirmed with Hyatt Place management and the hotel registry that the defendant was residing in room 230 and had been a "long time tenant of the hotel," and that a narcotics canine's open air sniff on room 230 indicated a positive alert. *Id.* at 10 ¶ 16. Accordingly, the Court is satisfied that the magistrate judge had a substantial basis for concluding that probable cause existed based on the totality of the circumstances detailed in the affidavit, irrespective of the informant's reliability.

Second, the defendant alleges that the search warrant "contains inaccurate and/or inconsistent information" because it "sets forth that the information was sworn to on April 22, 2025, which is prior to the dates in the search warrant." ECF No. 31 at 2. However, this argument, untethered to the applicable legal framework under *Franks v. Delaware*, 438 U.S. 154 (1978), fails because it is quite clear that the April 22, 2025 date is a scrivener's error that does not invalidate the warrant. The warrant is signed in several places on April 24, 2025, the date that the traffic stop occurred. *See* ECF No. 31-1 at 3, 11; *McLean v. Mallott*, No. 93–6714, 1993 WL 455239, at *1 (4th Cir. 1993) (unpublished) (typographical error does not invalidate a warrant).

Finally, the defendant argues that the hotel registry search, Hyatt Place management's disclosure of the room that the defendant was staying in, and the subsequent dog sniff outside of that room violated the defendant's Fourth Amendment interests because the police did not have a warrant to obtain hotel records and the defendant did not consent to such information being revealed. ECF No. 31 at 4–5. The defendant cites *Los Angeles v. Patel*, 576 U.S. 409 (2015) and Va. Code § 35.1-5 as support. But *Patel* held that a Los Angeles municipal code was unconstitutional because it penalized hotel operators for declining to turn over their records without affording them any opportunity for pre-compliance review. 576 U.S. at 412. The case does not stand for the proposition that a hotel's voluntary decision to turn over their records to the police is unconstitutional. And Va. Code § 35.1-5 merely provides that "the Commissioner or his designee shall have the right to enter at any reasonable time onto the premises of any hotel . . . to inspect, investigate," etc. The provision has no applicability here.

The defendant had no reasonable expectation of privacy in the hotel's guest registration records. *United States v. Cormier*, 220 F.3d 1103, 1108 (9th Cir. 2000) ("[A] guest has no reasonable expectation of privacy in guest registration records."). And so the hotel's voluntary disclosure of the room number in which the defendant was staying did not violate any purported privacy interest. Additionally, it is well established that a dog sniff is not a "search" for purposes of the Fourth Amendment, and so the dog sniff outside of room 230 could not have violated any purported privacy interest of the defendant. *Illinois v. Caballes*, 543 U.S. 405, 409 (2005).

11

Therefore, the search warrant was supported by probable cause.

### C.    Confidential Informant Disclosure

As part of his motion to suppress the fruits of the Hyatt Place search warrant, the defendant seeks disclosure pursuant to *Roviaro v. United States*, 353 U.S. 53 (1957) of CS1's identity "so the defense can adequately and fully investigate the facts that the search warrant is based upon." ECF No. 31 at 3.

In applying *Roviaro*, "the government is privileged to withhold the identity of the informant when the informant was a 'mere tipster,' or was used only for obtaining a search warrant," but "failing to disclose the informant's identity more likely amounts to error when the informant was an active participant in the events leading to the arrest of the accused." *United States v. Gray*, 47 F.3d 1359, 1365 (4th Cir. 1995) (citations omitted) (denying the defendant's request for an informant's identity "solely so that [the defendant] may challenge the validity of the search warrant"); *cf. United States v. Price*, 783 F.2d 1132, 1138 (4th Cir. 1986) (ordering the informant's disclosure because he was a necessary party to the telephone negotiations which led to the attempted drug sale that constituted the basis of the offense).

Here, the defendant does not articulate any reason for needing to obtain the identity of the confidential informant beyond challenging the validity of the search warrant. *See* ECF No. 31 at 3–4. Therefore, the request will be denied.

12

## IV.   CONCLUSION

Defendant Lyndrell Hawkins's motions to suppress (ECF Nos. 28, 30) are

**DENIED**.

**IT IS SO ORDERED**.

_____ /s/ _____

Jamar K. Walker
United States District Judge

Newport News, Virginia
May 28, 2026

13